# UNITED STATES DISTRICT COURT
# IN THE DISTRICT OF COLORADO

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>SLING TV L.L.C.<br><br>    *Defendant*. | Case No. 1:19-cv-00278-RBJ<br>Judge R. Brooke Jackson<br><br>**DEFENDANT'S PARTIAL MOTION TO DISMISS COUNTS II-IV OF THE FIRST AMENDED COMPLAINT (ECF NO. 37) AND MEMORANDUM IN SUPPORT** |

## I. MOTION TO DISMISS

Defendant Sling TV L.L.C. ("Sling") hereby moves to dismiss Counts II-IV of Plaintiff Uniloc 2017 LLC's ("Uniloc") first amended complaint under Fed. R. Civ. P. 12(b)(6).

## II. INTRODUCTION

Uniloc alleges infringement of U.S. Patents 6,895,118, 9,721,273, 8,407,609, and 6,519,005. At least three of these—the '118, '273, and '609 Patents—are invalid under 35 U.S.C. § 101. The '118, '273, and '609 Patents claim the abstract ideas of coding and decoding digital image data, aggregating content for presentation to users, and sending and monitoring the delivery of audio/visual information, respectively. The claims lack any saving inventive concept, reciting only generic computer elements performing admittedly conventional functions. Accordingly, Counts II-IV should be dismissed with prejudice.

## III. LEGAL STANDARDS

The Supreme Court has recognized that "abstract ideas" are not patentable. *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Whether a claim covers an abstract idea is determined through a two-part test. *Id.* at 217-18. Step one considers whether a claim's "character as a whole" is "directed to" an abstract concept or idea. *Elec.*

*Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  A claim that "only performs an abstract idea on a generic computer" is directed to an abstract idea.  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018).

If a claim is directed to an abstract idea, step two considers whether the claim's elements, both individually and as an ordered combination, "transform the nature of the claim" into an eligible application.  *Alice*, 573 U.S. at 217.  The inquiry is not whether the claim "as a whole is unconventional," but whether **the claim** contains an "inventive concept" sufficient to ensure that it amounts to significantly more than a patent on the abstract idea.  *BSG Tech*, 899 F.3d at 1290.  Reciting well-understood, conventional activity or limiting a claim to a particular environment is not enough to transform an abstract claim into a patent-eligible invention.  *See Alice*, 573 U.S. at 222-25.

Eligibility under § 101 is a question of law that may contain underlying issues of fact.  *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018).  The eligibility inquiry "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion.  *SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).  Although the Court must accept all well-pleaded facts as true at this stage, that tenet "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV. ARGUMENT

#### A. The '118 Patent Claims Patent-Ineligible Subject Matter

The '118 Patent relates to coding a digital image.  Rather than disclosing or claiming a new or novel method, the patent describes a "known" coding method and explains that an object of the alleged invention is to make this method "compatible with" existing

standards by inserting "conventional" markers into a data stream. *See* '118 Patent at Title, 1:6-32, 2:1-10, 4:35-42. The patent also describes a corresponding method for decoding. *See, e.g.*, *id.* at 6:62-7:19. Critically, the claims contain clearly abstract terms such as "estimation step" and "decision step" using known coding methods.

Claims 1-6 and 9 (the "coding claims") relate to coding a digital image and Claims 7-8 and 10 (the "decoding claims") relate to decoding a data stream. Claims 1 and 7 are representative of the coding and decoding claims, respectively, and recite:

> 1. A method of coding a digital image comprising macroblocks in a binary data stream, the method comprising:
> ***an estimation step***, for macroblocks, of a capacity to be reconstructed via an error concealment method,
> ***a decision step*** for macroblocks to be excluded from the coding, a decision to exclude a macroblock from coding being made on the basis of the capacity of such macroblock to be reconstructed,
> characterized in that it also includes a step of inserting a resynchronization marker into the binary data stream after the exclusion of one or more macroblocks.[1]
>
> 7. A method of decoding a binary data stream containing coded data of a digital image including macroblocks, said binary data stream containing resynchronization markers at regular intervals, including:
> ***a detection step for uncoded macroblocks*** in at least one location of the binary data stream,
> ***an error concealment step notably activated*** for uncoded macroblocks which are detected in the detection step,
> characterized in that the detection step for uncoded macroblocks includes a detection substep for the purpose of detecting irregular intervals between the resynchronization markers.[2]

---

[1] Claims 2-3 and 5 do not change the focus of Claim 1. Claim 4 claims a "coder" with modules to do the steps of Claim 1. Claim 6 claims "coded data" analogous to Claim 1. Claim 9 claims a "computer program product" that runs the method of Claims 1-3.

[2] Claim 8 claims a "decoder" having modules for performing the steps of Claim 7. Claim 10 claims a "'computer program' product" that performs the method claimed in Claim 7.

All of the claims are "substantially similar [to] and linked to the same abstract idea" as their respective representative claim.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

### i. The Claims Are Directed to an Abstract Idea (*Alice* Step 1)

Claims 1 and 7 are directed to abstract coding and decoding digital image data, respectively.  The Federal Circuit has recognized that claims directed to "encoding and decoding image data," without more, are directed to an abstract idea and that "standard encoding and decoding [is] an abstract concept long utilized to transmit information." *RecogniCorp, LLC v. Nintendo Co., Ltd*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Claims 1 and 7 recite steps of algorithms for coding/decoding digital image data at a high level using abstract, result-based language such as "estimation" or "decision" steps and functional language such as "detection" or "error concealment" methods.  The most specific step, "error concealment," provides no basis at all for how any particular "error" is concealed.  Notably absent from the claims is any detail regarding *how* the steps are performed.  At this level of generality, "the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).  Thus, the focus of the claims is not a technical improvement but rather the abstract idea of coding and decoding image data.

Indeed, Claim 1 merely manipulates existing information (a digital image) to generate additional information (a coded data stream); Claim 7 reverses this process.  But "a process that employs mathematical algorithms to manipulate existing information

4

to generate additional information is not patent eligible."³ *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014). Where, as here, a claim is "in practical effect" a "patent on the algorithm itself," it is ineligible. *Gottschalk v. Benson*, 409 U.S. 63, 72 (1972). Thus, the Court should proceed to step two.

### ii. The Claims Do Not Contain an Inventive Concept (*Alice* Step 2)

There is "nothing 'inventive' about any claim details, individually or in combination, that are not themselves in the realm of abstract ideas." *SAP Am.*, 898 F.3d at 1170. The claims recite steps of an algorithm to manipulate information, without more. This is insufficient, however, as step two requires "an inventive concept in the non-abstract application realm." *Id.* at 1168. Limiting the claims to digital images in a data stream "does not move the claims out of the realm of abstract ideas." *Id.* at 1169. Similarly, the "evaluation" and "calculation" steps in Claims 2-3 merely "provide further narrowing of what are still mathematical operations" and "add nothing outside the abstract realm." *Id.*

Even if these steps could supply an inventive concept, they do not, as the patent confirms that these elements were well-understood, routine, and conventional activity. The patent admits that a "coding method" including the same "estimation" and "decision" steps of Claim 1 was "known from" an IEEE article published years earlier. *See* '118 Patent at 1:6-32.⁴ The patent also acknowledges that "inserting a resynchronization

---

³ The "evaluation" and "calculation" steps of Claims 2 and 3 that analyze information "using mathematical techniques" are also abstract. *SAP Am.*, 898 F.3d at 1167.

⁴ The "detection" and "error concealment" steps of Claim 7 are also admittedly well-known. *See, e.g., id.* at 1:21-32 (describing method in IEEE article in which excluded blocks are "detected by the receiver"); 1:6-21 (reconstructing macroblocks "via an error concealment method" was "known"); 1:41-42 ("markers are used by the receiver").

marker" as recited in Claim 1 was known from the "MPEG-4 standard" and that the alleged invention uses "conventional markers."  *See id.* at 1:38-42, 4:35-41.

Although Claim 4 recites a "coder," "estimation module," and "decision module" and Claim 8 recites a "decoder," "detection module," and "error concealment module," nothing in the patent suggests that these elements require any improved computer resources. They are merely used "as tools in executing the claimed process" and thus do not supply an inventive concept.  *SAP Am.*, 898 F.3d at 1170; *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) (applying "coined labels to conventional structures does not make the underlying concept inventive").

The attorney argument in Uniloc's complaint cannot overcome the abstract and admittedly conventional nature of the claims.  Despite counsel's edits to the complaint, the claims remain unchanged.  Counsel's amended complaint cannot edit out the clearly abstract "decision" or "estimation" steps given their obviously abstract meaning.  Nor can identifying a more specific problem change a claim that starts with an "estimation" and ends with a "decision."  Uniloc alleges that Claim 1 solves problems "by using resynchronization markers *in a way they had not been used before—as replacements for excluded blocks*."  Dkt. 37 at ¶57 (emphasis added).  Claim 1, however, does not even specify a specific placement of the marker in the stream, let alone require that it replace an excluded block.  It merely recites "inserting a resynchronization marker into the binary data stream *after the exclusion of* one or more macroblocks."  Where this insertion is or how it is achieved is clearly not claimed.  As such, Uniloc's alleged improvement is not "captured in the claims" and thus cannot supply an inventive concept.

6

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

### iii. Independently, Claim 6 Is Not Directed to Statutory Subject Matter

Claim 6 is also invalid because it does not fall within any category of eligible subject matter (i.e., "process, machine, manufacture, or composition of matter"). 35 U.S.C. § 101. "For all categories except process claims, the eligible subject matter must exist in some physical or tangible form." *Digitech*, 758 F.3d at 1348. Claim 6 is not a process; it claims "[a] coded data of a digital image." Data in its non-physical form, such as that in Claim 6, is not a tangible or physical thing; it is simply information and as such does not fall under any eligible category. *See id.* at 1349-50. Thus, Claim 6 is invalid because it does not encompass eligible subject matter as required by section 101. *See id.* at 1350.

### B. The '273 Patent Claims Patent-Ineligible Subject Matter

The '273 Patent contains three claims related to aggregating content, such as audio and/or video, "for presentation to users." '273 Patent at 4:34-42. Claim 1 recites:

> 1. A method for providing content via a computer network and computing system, the method comprising:
> storing presentation data that represents content of a first collection of one or more presentations using the computer system;
> storing data indicative of the first collection of presentations so as to be associated with the presentation data;
> storing feed data that represents a collection of one or more feeds using the computer system, wherein each of the feeds identifies a corresponding second collection of one or more presentations being accessible via the computer network and includes no data representing content of the second collection of presentations;
> automatically and periodically accessing each of the feeds to identify each of the corresponding second collection of presentations, using the computer system;
> storing data associated with a third collection of one or more presentations; and
> ***aggregating each of the first, identified second, and third collections of presentations for delivery via the computer network***

*using a common web page*.

Claim 1 is representative of all claims. Claim 2 is a "computer readable medium" claim that recites the same steps as Claim 1. Claim 3 further defines the computer system of Claim 2, but does not change the focus of the claim. Thus, the claims are all "linked to the same abstract idea," as detailed below. *See Content Extraction*, 776 F.3d at 1348.

### i. The Claims Are Directed to an Abstract Idea (*Alice* Step 1)

The "method for providing content" in Claim 1 includes essentially three steps: (1) storing information related to collections of presentations and feeds; (2) accessing feeds to identify associated collections of presentations; and (3) aggregating collections of presentations for delivery using a common web page. The focus of Claim 1 "as a whole" is the abstract idea of aggregating content for presentation to users, which is a well-known, longstanding concept with numerous real-world analogues. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (finding "brick-and-mortar" analogy useful at step one). Print newspapers, for example, have always aggregated content (e.g., different collections of articles in Sports, Business, and Opinion sections of a newspaper) for delivery to readers. Claim 1 simply recites performing this "abstract idea on a generic computer." *BSG Tech*, 899 F.3d at 1285.

Claim 1 is analogous to other ineligible claims directed to abstract ideas. In *Interval Licensing*, for example, the Federal Circuit found that claims related to acquiring and displaying content were directed to the abstract idea of "the presentation of two sets of information, in a non-overlapping way, on a display screen." 896 F.3d at 1338. Indeed, the Federal Circuit has repeatedly "treated collecting information, including when limited

to particular content . . . as within the realm of abstract ideas." *Elec. Power Grp.*, 830 F.3d at 1353 (collecting cases). Even if Claim 1 requires delivering the aggregated content to the user, the law is clear that "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract[.]" *Id.* at 1354. Claim 1 requires no particular tool, only "a common web page" that admittedly may take any form and have any content "conventionally achieved in the pertinent arts." '273 Patent at 5:12-14.

Indeed, Claim 1 lacks any meaningful limitations that improve a computer as a tool, reciting instead "nothing more than generic, pre-existing computer functionality." *Interval Licensing*, 896 F.3d at 1345. Claim 1 requires the functional results of "storing," "accessing," and "aggregating," but does not describe how to achieve these results in a non-abstract way. Neither the claims nor the specification purports to improve how data is stored, how feeds are accessed, or how content is aggregated. In fact, the "aggregating" step is so broad that it encompasses all ways of aggregating content. The absence of any specific improvement to computer functionality distinguishes Claim 1 from claims found eligible at step one. Thus, the Court should proceed to step two.

### ii. The Claims Do Not Contain an Inventive Concept (*Alice* Step 2)

Claim 1 does not contain any saving inventive concept. The "storing," "accessing," and "aggregating" steps amount to a claim to the abstract idea itself and thus cannot add "significantly more[.]" *See BSG Tech*, 899 F.3d at 1290 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept[.]"). Moreover, these steps are nothing more than routine, pre-existing computer functionality.

9

Storing data is "undisputedly well-known[.]" *Content Extraction*, 776 F.3d at 1347. The patent acknowledges that the claimed "feeds" are a known, "standardized format" used in the "commonplace" practice of syndicating content, and "accessing" feeds as in Claim 1 is routine. '273 Patent at 10:63-11:19 (describing known application that "typically checks . . . feeds for new content at predetermined intervals"). The patent also admits that aggregating content is well-known to those skilled in the art. *See id.* at 6:21-23 ("[T]here are a number of ways to aggregate and provide content using [a] web page[.]").

The other elements in Claims 1-3 are generic and do not supply an inventive concept. *See Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (finding no inventive concept in a claim that simply recites the use of "generic features" and "routine functions" to implement the underlying idea). The patent confirms that there is nothing inventive about the "network," "computing system," "computer system," or "web page" in Claim 1. *See* '273 Patent at 3:55-57 (the "computer" is "general purpose"), 4:21-24 (browsers are "[c]ommercially available"); 4:48-67 (describing generic elements of a network); 5:12-14 (describing conventional page formats). The "computer readable medium" and "instructions" in Claim 2 merely "spell out what it means to 'apply it on a computer.'" *See In re TLI Commc'ns LLC Patent Litg.*, 823 F.3d 607, 615 (Fed. Cir. 2016). Nothing in the patent suggests that the servers in Claim 3 are unconventional.

Considered as an ordered combination, Claim 1 recites an entirely "conventional ordering of steps"—storing data, accessing feeds to identify more data, and then aggregating the data for presentation to users—performed with conventional technology. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir.

2017).  There is no "non-conventional arrangement" of known elements; the claim merely recites the abstract idea of aggregating content performed using generic computer components, which does not constitute an inventive concept.  *Id.*

Uniloc's amended complaint relies heavily on the specification in a scattershot attempt to identify an inventive concept.  None of the amendments supplies an inventive concept (or creates a factual dispute), however, because the alleged improvements are not "captured in the claims."  *Berkheimer*, 881 F.3d at 1369.  Claim 1 conspicuously lacks elements capturing solutions to the problems with search engines (e.g., nuances of human language) or RSS feeds that Uniloc now identifies.  *See* Dkt. 37 at ¶¶78-79.  It does not require "providing feed data on webpages," a "centralized approach to access feeds," or "aggregation with non-RSS content."  *Id.*  Rather, the patent makes clear that **the claims** recite only conventional activity.  As such, the claims are ineligible "under the substantive standards of law" and dismissal is appropriate.  *SAP Am.*, 898 F.3d at 1166.

### C. The '609 Patent Claims Patent-Ineligible Subject Matter

The '609 Patent relates to "providing and tracking the provision of audio and visual presentations via a computer network."  *See* '609 Patent at Title.  The patent describes that knowing how long a user watched or listened to a program is desirable not because it improves technology, but because it enables a provider to implement "an increasing scale of payments for advertising[.]"  *Id.* at 11:48-53, 13:48-14:2.  Claim 1 recites:

> 1. A method for tracking digital media presentations delivered from a first computer system to a user's computer via a network comprising:
> **providing a corresponding web page** to the user's computer for each digital media presentation to be delivered using the first computer system;
> **providing identifier data** to the user's computer using the first

computer system;

***providing an applet*** to the user's computer for each digital media presentation to be delivered using the first computer system, wherein the applet is operative by the user's computer as a timer;

***receiving*** at least a portion of the identifier data from the user's computer responsively to the timer applet each time a predetermined temporal period elapses using the first computer system; and

***storing data*** indicative of the received at least portion of the identifier data using the first computer system;

wherein each provided webpage causes corresponding digital media presentation data to be streamed from a second computer system distinct from the first computer system directly to the user's computer independent of the first computer system;

wherein the stored data is indicative of an amount of time the digital media presentation data is streamed from the second computer system to the user's computer; and

wherein each stored data is together indicative of a cumulative time the corresponding web page was displayed by the user's computer.

Claim 1, the sole independent claim, is representative. Dependent Claims 2 and 3 further define the received data and how it is stored, but do not alter the focus of Claim 1 to something other than an abstract idea. *See Content Extraction*, 776 F.3d at 1348.

### i. The Claims Are Directed to an Abstract Idea (*Alice* Step 1)

Claim 1 includes three abstract steps: (1) ***providing*** identifier data, a web page for streaming a digital media presentation, and a timer to a user's computer; (2) ***receiving*** some of the identifier data each time the timer expires; and (3) ***storing*** data indicating how long the page was displayed on the user's computer. The focus of Claim 1 "as a whole" is sending and monitoring the delivery of audio/visual information, a concept the Federal Circuit has confirmed is an abstract idea. *Two-Way Media*, 874 F.3d at 1337.

Indeed, for purposes of the step-one analysis, the "method for tracking digital media presentations" recited in Claim 1 is virtually identical to the ineligible claims related to "streaming audio/visual data" in *Two-Way Media*. *Id.* at 1333. The representative claim

in *Two-Way Media* recited steps for routing a stream of audio and/or visual information to users and "accumulating records" indicating the time a user starts and stops receiving information (i.e., storing information indicating the amount of time a digital media presentation is streamed). *Id.* at 1334-35. Claim 1 is abstract for analogous reasons. It requires the functional results of "providing," "receiving," and "storing," but does not sufficiently describe how to achieve these results in a non-abstract way. *See id.* at 1338. Claim 1 uses generic elements (e.g., generic computers and an applet) to carry out the abstract idea, which does not save the claim from abstraction. *See id.*

Rather, for an application of an abstract idea to avoid classification as an abstract idea at step one, the claim's focus must be something other than the abstract idea itself. *BSG Tech*, 899 F.3d at 1285. That is not the case here. Although the patent suggests that "knowledge of how long a particular viewer spent on a particular page" is "not conventionally available," ('609 Patent at 7:42-52), that is not equivalent to improving the functionality of the underlying technology. Nielsen has been doing this since the 1960s, in which a "Nielsen Rating" is derived from how much time a particular household spent on each TV show. Here, the claim recites this same conventional concept in the context of conventional computer components. The patent makes clear that this information enables a commercial practice—"an increasing scale of payments for advertising"—not a technical improvement. *Id.* at 7:47-52. The elements serve in their ordinary capacity performing routine functions. Even if this alleged benefit were captured in the claims (it is not), "measuring the delivery of real-time information for commercial purposes" is abstract. *Two-Way Media*, 874 F.3d at 1340. The Court should proceed to step two.

### ii. The Claims Do Not Contain an Inventive Concept (*Alice* Step 2)

Nothing else in the claims transforms the abstract idea into a patent-eligible application. The patent admits that the additional elements of Claim 1 are conventional: the computers are "general purpose" ('609 Patent at 3:11-13); the "web page" is provided "in a conventional manner" and the "digital media presentation" is streamed using "commercially available" applications (*Id.* at 4:43-62); an "applet" is a well-known software component "typically used to perform a specific function or task" (*Id.* at 12:66-13:4); users are identified by "known methodologies" (*Id.* at 13:30-33); information is gathered using "commercially available" applications (11:44-46); and storing data is "undisputedly well-known[.]" *Content Extraction*, 776 F.3d at 1347. There is nothing inventive about "incrementing a stored value" as recited in Claim 2. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("routine additional steps such as updating an activity log" fail to transform an abstract idea). Limiting the received data to "data indicative of a temporal cycle passing" in Claim 3 "does nothing significant to differentiate" the process from the abstract idea. *Elec. Power Grp.*, 830 F.3d at 1355.

Considered as an ordered combination, the claims recite the "conventional ordering of steps" one would expect when applying the abstract idea of sending and monitoring delivery of audio/visual content on a computer—providing data, receiving data, and storing it—using conventional technology to achieve the desired result. *Two-Way Media*, 874 F.3d at 1339. Although Claim 1 requires the "presentation data to be streamed from a second computer system," this is not a "non-generic arrangement" that can save the claims at step two. *Elec. Power Grp.*, 830 F.3d at 1355. The patent does not purport to

have invented this known approach to providing content. Instead, this aspect merely limits the claims to a particular technological environment, which is "insufficient to transform them into patent-eligible applications" at step two. *Id.* at 1354.

Thus, the claims lack an inventive concept. Uniloc's amended complaint does not compel a different conclusion, because its allegations of inventiveness fail under scrutiny. There is a disconnect between Claim 1 and the problems with search engines described in the patent and relied on by Uniloc in its complaint, such that solutions to those problems, if any, are not "captured in the claims." *See Berkheimer*, 881 F.3d at 1369. As explained above, limiting Claim 1 to an environment in which content is "hosted on a third-party system" is insufficient. Dkt. 37 at ¶107. Finally, Uniloc's assertion that Claim 1 enables streaming "from the same point no matter where the user left off" (*Id.*, ¶106) is unsupported by the patent and need not be taken as true. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 316 F. Supp. 3d 1138, 1154 (N.D. Cal. 2018) (rejecting allegation in amended complaint that a feature was inventive because the patent did not support the assertion).

## V. CONCLUSION

For the above reasons, the claims of the '118, '273, and '609 Patents are invalid. Sling TV respectfully requests that the Court dismiss Counts II-IV of Uniloc's complaint.

Dated: April 24, 2019

Respectfully submitted,
*/s/ Kurt M. Pankratz*
Kurt M. Pankratz
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Telephone: (214) 953-6500
Fax: (214) 953-6503
Email: kurt.pankratz@bakerbotts.com
*Attorneys for Defendant Sling TV L.L.C.*

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/EMF system on the 24th day of April, 2019. Any other counsel of record will be served via First Class Mail.

          */s/ Ali Dhanani*
          Ali Dhanani