UNITED STATES DISTRICT COURT
IN THE DISTRICT OF COLORADO

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SLING TV L.L.C.<br><br>*Defendant*. | Case No. 1:19-cv-00278-RBJ<br>Judge R. Brooke Jackson<br><br>**DEFENDANT'S MOTION TO STAY PENDING DECISIONS ON PETITIONS FOR *INTER PARTES* REVIEW** |

## I. MOTION TO STAY

Defendant Sling TV L.L.C. ("Sling") hereby moves to stay this action pending decisions by the Patent Trial and Appeal Board ("PTAB") on Sling's petitions for *inter partes* review ("IPR") challenging the validity of all asserted claims. Sling respectfully requests a reasonable stay of approximately six months until the PTAB decisions on institution have been made (at which point, if the PTAB institutes, Sling may request a further stay).

Defendant and Plaintiff have met and conferred pursuant to D.C.COLO.LCivR 7.1(a) and the Plaintiff opposes this motion.

## II. INTRODUCTION

IPR proceedings are designed to be an efficient and cost-effective alternative to district court litigation. Sling has filed a comprehensive set of petitions for IPR that collectively challenge the validity of every claim asserted by Plaintiff Uniloc 2017 LLC ("Uniloc"). The Court should stay this case pending institution decisions on Sling's petitions for IPR. Continuing to litigate this action in parallel with the PTAB proceedings would be an inefficient use of the Court's and the parties' resources. Indeed, each factor that courts in this district consider in deciding whether to stay a case weighs in favor of granting Sling's motion to stay.

*First*, staying this case to allow the PTAB to consider the validity of the asserted claims will simplify—and potentially eliminate—issues of validity and infringement of the asserted patents. The IPR proceedings have the potential to be case-dispositive. If the PTAB concludes that the asserted claims are invalid, then this action becomes moot. Even if the PTAB does not find all claims invalid, or determines not to institute trial on Sling's petitions, granting a stay will likely simplify issues—such as claim construction—for this Court. *Second*, this case is in its early stages and, as such, is well-suited for a stay. *Third*, staying this case would neither prejudice Uniloc nor present a tactical advantage to Sling. Sling promptly availed itself of the IPR procedure as a cost-effective and efficient alternative to the district court litigation—just as Congress intended. Any delay resulting from the stay would not unduly prejudice Uniloc, which is a non-practicing entity that does not compete directly with Sling. Uniloc should not be heard to complain, because it already sought and received a stay for one of the four patents in this case so that parallel proceedings that could impact this case could run their course. Sling seeks a stay of the remaining three patents in suit for many of the same reasons. *Finally*, a stay will reduce the burden of litigation on the parties and the Court. It would be inefficient to proceed with discovery, invalidity contentions, and claim construction when much of that work may be unnecessary or need to be revisited in view of the PTAB proceedings. Staying the case now, as opposed to after the PTAB issues its institution decisions, will minimize the costs to the parties and the burden on the Court.

Considering the totality of the circumstances, the Court should grant Sling's motion to stay.

### III. FACTUAL BACKGROUND

On January 31, 2019, Uniloc filed a complaint alleging infringement of U.S. Patent Nos. 6,519,005 ("the '005 Patent"), 6,895,118 ("the '118 Patent"), 9,721,273 ("the '273 Patent"), and

8,407,609 ("the '609 Patent"). *See* Dkt. 1. Sling promptly moved to dismiss Uniloc's claims related to the '118, '273, and '609 Patents on the ground that those patents claim ineligible subject matter. *See* Dkt. 29. In response, Uniloc filed an amended complaint on April 10, 2019. *See* Dkt. 37. Sling again moved to dismiss Uniloc's claims related to the '118, '273, and '609 Patents. *See* Dkt. 40. Notably, in the time since Uniloc filed its complaint, a court in the Central District of California held that Claim 1 of the '005 Patent (the only claim alleged to be infringed in the amended complaint) is invalid because it claims ineligible subject matter. *See Uniloc 2017 LLC v. Hulu, LLC*, No. 8:18-cv-02058-GW-DFM, Dkt. 59 at 13-14 (C.D. Cal. May 14, 2019). Uniloc then requested and received a stay in this case with respect to the '005 Patent.

Uniloc served its preliminary infringement contentions on June 16, 2019.[1] Within two months of receiving Uniloc's identification of asserted claims, Sling filed IPR petitions collectively challenging the validity of all asserted claims. *See* Exs. A-C. Sling also filed a petition for IPR challenging claims of the '005 Patent, which Uniloc is no longer asserting and has been stayed at Uniloc's request.[2] *See* Ex. D. Sling expects that the PTAB will issue institution decisions on all of Sling's petitions no later than February 2020, as shown in the table below:

| IPR | Patent (Challenged Claims) | Filing Date | Institution Decision Expected[3] |
|---|---|---|---|
| IPR2019-01270 | '005 Patent (Claims 1-16 and 39-42) | June 25, 2019 | January 11, 2020 |

---

[1] Uniloc's preliminary infringement contentions do not accuse Sling of infringing any claim of the '005 Patent.

[2] In addition to Sling's petition, at least one other petition for IPR has been filed against the '005 Patent. *See Unified Patents Inc. v. Uniloc 2017 LLC*, IPR2019-01126, Paper No. 1 (P.T.A.B. May 28, 2019).

[3] The USPTO must issue an institution decision within six months after the date the PTO accorded a filing date to the petition. *See* 35 U.S.C. §§ 313-14.

| IPR | Patent (Challenged Claims) | Filing Date | Institution Decision Expected[3] |
|---|---|---|---|
| IPR2019-01363 | '273 Patent (Claims 1-3) | July 19, 2019 | January 26, 2020 |
| IPR2019-01367 | '609 Patent (Claims 1-3) | July 22, 2019 | February 6, 2020 |
| IPR2019-01391 | '118 Patent (Claims 1-6, 9) | August 12, 2019 | February 2020 |

This case is in its early stages. Sling's motion to dismiss is pending before the Court and oral argument on the motion to dismiss has not yet been reset. *See* Dkt. 63. The parties have only just begun written discovery. Uniloc has served a single set of requests for production, which Sling responded to on June 21, 2019. Neither party has scheduled or taken depositions of any fact or expert witnesses. Sling's invalidity contentions are not due until September 2, 2019. *See* Dkt. 51 at 9. However, in six months (by the time the PTAB will have issued all of the institution decisions), the parties will have completed claim-construction briefing (*see* Dkt. 51 at 10) and the Court's *Markman* hearing will be only weeks away. *See* Dkt. 49 at 2. Trial is set for January 19, 2021, more than one and a half years away. *See* Dkt. 49 at 1.

### IV.   LEGAL STANDARDS

District Courts have the power to control their own dockets, which includes the ability to exercise broad discretion on whether to stay proceedings before them. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997). There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of" IPR proceedings, which were designed to be "a timely, cost-effective alternative to litigation." *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-01153-VAP, 2015 WL 1809309, at *1, *3 (C.D. Cal. Apr. 20, 2015). In determining whether to stay a case pending parallel USPTO proceedings, courts in this district consider a number of factors and the totality of the circumstances. *See Gemalto S.A. v. CPI Card Group Inc.*, No. 15-cv-02776-

4

RM-MJW, Dkt. 100 at 2 (D. Colo. July 11, 2016). In particular, courts consider: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Id.*

"A stay is particularly justified where the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *Evolutionary Intelligence, LLC v. Millennial Media, Inc.*, No. 5:13-cv-04206-EJD, 2014 WL 2738501, at *2 (N.D. Cal. June 11, 2014). Courts often stay cases pending IPR pre-institution, including courts in this district. *See Gemalto*, No. 15-cv-02776-RM-MJW, Dkt. 100 at 2-4 (staying case pre-institution to allow PTAB to consider defendant's petition). *See also Uniloc USA Inc. v. LG Elecs. U.S.A. Inc.*, No. 18-cv-06737-JST, 2019 WL 1905161 (N.D. Cal. Apr. 29, 2019).

**V.     ARGUMENT**

Staying this case pending decisions on Sling's petitions for IPR is the most efficient course of action for both the Court and the parties. Importantly, all four factors that courts consider in determining whether to grant a stay pending IPR weigh heavily in favor of a stay.

**A.     A stay will simplify issues and streamline the trial.**

The first factor—whether a stay will simplify the issues in question and streamline the trial—weighs in favor of a stay. The IPR proceedings not only have the potential to be case-dispositive, they will simplify the Court's claim construction analysis and eliminate the risks of multiple trials and inconsistent results between this Court and the PTAB. Staying this case will also simplify the Court's invalidity analysis and reduce the complexity of discovery.

### i. A stay will help avoid the need for two separate trials.

Granting a stay would help maintain a consistent schedule for all potential patents in suit and avoid the need for more than one trial. One of the four asserted patents, the '005 Patent, has already been stayed pending an appeal to the Federal Circuit on the issue of patent eligibility. If Sling's motion is not granted, this case will proceed as to only three of the asserted patents. If Uniloc wins its appeal related to the '005 Patent, then it is likely that two trials would be required under the current schedule. That would be inefficient for the parties and the Court. *See Am. GNC Corp. v. LG Elecs. Inc.*, No. 17-cv-01090-BAS-BLM, 2018 WL 1250876, at *4 (S.D. Cal. Mar. 12, 2018) ("The rationale for a full stay is simple. 'Moving forward only a subset of the [patents-in-suit] would create significant inefficiencies,' including the possibility of 'multiple trials on multiple timelines with duplicative discovery, claim construction, and dispositive motions, burdening both the parties and the Court.'") (internal citations omitted). Granting a stay would allow Sling to proceed against all four patents in suit before the PTAB and allow time in parallel for the appeal of the '005 Patent. *See id.* ("Without a full stay, the proceedings risk devolving into what would be effectively two different cases in the guise of one—different claim construction hearings, different discovery timelines, and, under the worst case scenario, different trials."). After the parallel proceedings are resolved, any remaining patents and issues can be tried in a single trial.

### ii. The IPR proceedings will likely eliminate issues for trial.

Sling's IPR petitions may ultimately dispose of Uniloc's entire case. Uniloc's only cause of action is patent infringement and Sling has challenged the validity of every asserted claim. Accordingly, this suit will be dismissed if the PTAB finds all the asserted claims invalid. *See Fresenius USA, Inc. v. Baxter Int'l Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a claim

is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot."). Even if the PTAB finds only some of the asserted claims invalid, the issues will be simplified because the Court will not need to try issues of validity or infringement with respect to the invalidated claims. Courts have granted a stay pre-institution in analogous circumstances. *See, e.g.*, *Wonderland Nursery*, 2015 WL 1809309, at *3, *5 (granting a motion for stay pre-institution and noting that "because Defendants have petitioned for review of all claims asserted in this action, the outcome of the IPR has the potential to be case-dispositive"). If Sling does not prevail in any given IPR, this Court's invalidity analysis will still be simplified, because Sling may be estopped from making certain invalidity arguments on the instituted claims to the extent those arguments were made to the PTAB. *See* 35 U.S.C. § 315(e)(2).

      iii.    **The IPR proceedings will simplify claim construction and reduce the risk of inconsistent results.**

Regardless of whether the PTAB institutes trial on Sling's petitions, the IPR proceedings may simplify issues for claim construction. It is well established that "statements made by a patent owner during an IPR proceeding, ***whether before or after an institution decision***, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) (emphasis added). Uniloc's statements in the IPRs will "put the public on notice of how the patent owner views its patent[s]" and the prior art and will bind Uniloc in this action. *F5 Networks, Inc. v. Radware, Inc.*, No. 17-CV-03166-VC, 2018 WL 6039873, at *1 (N.D. Cal. Nov. 19, 2018). A pre-institution stay is appropriate here, because the parties' arguments and the institution decisions will "add to the intrinsic record." *Grobler v. Apple Inc.*, No. 12-cv-01534-JST, Dkt. 67 (N.D. Cal. June 6, 2013).

Importantly, the PTAB now applies the same claim construction standard in IPR

7

proceedings as this Court. *See* 37 C.F.R. § 42.100 (claims "shall be construed using the same claim construction standard that would be used to construe the claim in a civil action"). If the PTAB construes terms of the asserted claims for purposes of the institution decision, as it is likely to do, those constructions and the Board's reasoning will simplify the claim-construction analysis for this Court.[4] The further development of the intrinsic record and the possibility that the PTAB will construe terms are particularly relevant here given the Court's schedule for claim construction. *See* Dkt. 51 at 9-10. Under the Court's Scheduling Order, the parties will complete briefing on claim-construction issues before the Board issues institution decisions. *See id.* at 10 (setting claim construction briefing schedule that ends on January 6, 2020). The Court's claim construction hearing is set for a few weeks later, on February 13, 2020. Proceeding with claim construction briefing while the intrinsic record of the asserted patents is still developing and with the possibility that the Board may construe certain claims would not be efficient for the parties or the Court.

For instance, pre-institution proceedings in the IPRs may inform the parties' decisions on claim terms to propose for construction in this action and, even if institution is denied, the Board's analysis is likely to influence the parties' proposed constructions. Absent a stay, the parties will have to elect terms and propose constructions without the benefit of the Board's analysis. And, if the IPR proceedings are instituted, it would be an inefficient use of the Court's resources to hold a technology tutorial and *Markman* hearing and prepare a claim construction order when the Court's analysis may benefit from the Board's "expert opinion on the claims at issue." *IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co. Ltd.*, No. 15-cv-03752-HSG, 2015 WL 7015415, at *3 (N.D. Cal. Nov. 12, 2015). Proceeding with claim construction in parallel with the IPR proceedings also

---

[4] Sling, for instance, has proposed claim constructions for twenty terms of the challenged claims.

poses the risk of inconsistent results and increases the likelihood that the Court may have to revisit certain issues. *See Wonderland Nursery*, 2015 WL 1809309, at *5 ("[T]he record created during any IPR proceedings may affect the claim construction analysis and may require new briefing.").

Accordingly, the most prudent approach is to stay this action pending decisions on Sling's petitions for IPR. Consistent with this Court's guidance in other cases, Sling promptly sought a stay to minimize the burden on the parties and the Court given the simplification of claim construction issues likely to result from the IPRs. *See Realtime Adaptive Streaming v. Sling TV L.L.C.*, No. 1-17-cv-02097, Dkt. 162 (D. Co. Feb. 26, 2019) (granting stay and suggesting that the parties seek a stay "before putting courts to the work involved in a Markman hearing and order").

### iv. A stay will simplify issues for discovery.

Granting a stay at this stage in the litigation will also reduce the complexity of discovery, even if the PTAB does not find all the challenged claims invalid. Granting a stay now would eliminate the need for post-IPR fact and expert discovery regarding the prior art that the PTAB examines during the IPRs. Because discovery has just begun, the savings resulting from simplification would be substantial. If the case is stayed, the parties will be able to limit post-IPR written discovery requests to just those issues remaining in the case after the IPRs. Similarly, depositions can be limited to a smaller pool of witnesses, eliminating the need to depose individuals whose testimony relates to invalidated claims. Expert discovery would be similarly streamlined, as only the issues remaining in the case would need to be addressed.

For the foregoing reasons, a stay will simplify issues and streamline trial in this case. Accordingly, the first factor weighs in favor of granting Sling's motion to stay.

### B. The stage of litigation weighs heavily in favor of staying the case.

The second factor—whether discovery is complete and whether a trial date has been set—weighs in favor of a stay. Sling seeks only a stay pending the PTAB institution decisions and will seek a further stay if the petitions are instituted. Although the Court has set a January 19, 2021 trial date, this case is in its early stages. The parties have just begun written discovery. Uniloc served a single set of requests for production, which Sling responded to on June 21, 2019. Fact discovery does not close until July 4, 2020. *See* Dkt. 51 at 10. Thus, in the unlikely event that all petitions are denied, it would be possible to maintain the present trial schedule.

At this time, neither party has scheduled or taken depositions of any witnesses. Sling's invalidity contentions are not due until September 2, 2019. The claim construction process does not begin until October 2019, and the Court's *Markman* hearing is not until February 13, 2020. Summary judgment briefing, pretrial and trial preparation are well in the future. *See id.* at 11.

Where, as here, there has been little material progress in a litigation, courts in this district and elsewhere have found that the second factor weighs in favor of a stay. In *Gemalto*, for example, the court found that this factor weighed in favor of a pre-institution stay because, despite plaintiff's arguments that the parties had engaged in "extensive discovery," discovery was not complete and "in the context of the overall lawsuit" the case was "still in its early stages." *Gemalto*, No. 15-cv-02776-RM-MJW, Dkt. 100 at 3. Similarly, in *Wonderland Nursery*, the court found this factor weighed in favor of a pre-institution stay, because "fact discovery is not yet complete, expert discovery has not yet begun," a "*Markman* hearing has not yet taken place and

10

no disputed claim terms have been construed[.]" *Wonderland Nursery*, 2015 WL 1809309 at *3.[5] For analogous reasons, the second factor heavily favors granting Sling's motion to stay.

    **C.    Staying the case would not unduly prejudice Uniloc and does not present a clear tactical advantage for Sling.**

The third factor also weighs in favor of a stay, because granting the stay would neither present a clear tactical advantage for Sling nor unduly prejudice Uniloc. Sling acted diligently with respect to both filing its IPR petitions and filing this motion to stay. Sling promptly filed its petitions within two months after Uniloc identified its asserted claims and more than six months before the expiration of the one-year bar for filing petitions for IPR in 35 U.S.C. § 315(b). The day after Sling filed the last of its petitions, Sling filed this motion to stay. There is no tactical advantage or gamesmanship here. Rather, Sling exercised its statutory right to request PTAB review of the asserted patents for the same reason contemplated by Congress in enacting IPR—as a cost-effective and efficient alternative to district court litigation. Because Uniloc would not be unduly prejudiced by a stay, this factor weighs heavily in favor of granting the stay.

Any argument that Uniloc would be prejudiced by a stay is undermined by the fact that Uniloc already sought and obtained a stay as to one of the asserted patents in this case pending an appeal to the Federal Circuit. The reasoning behind Uniloc's request for a stay is the same as Sling's—to allow parallel proceedings to run their course before progressing further in this action. The fact that Uniloc will be an adversarial participant in the IPRs (an advantage that Sling does not have with respect to the appeal of the '005 Patent) further undermines any claim of prejudice

---

[5] Courts have found this factor weighs in favor of a stay in cases that have progressed much further than the present case. *See, e.g.*, *ACQIS LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356-57 (D. Mass. 2015) (finding this factor favored a stay where "substantial" document and written discovery had occurred, a *Markman* hearing had occurred, and the court had issued a claim construction order).

by Uniloc. Accordingly, Uniloc should not be heard to complain that it would be prejudiced by a stay as to the remaining asserted patents.

Uniloc cannot show any real prejudice that would result from a stay. Importantly, delay alone (which, as noted above, is not a foregone conclusion) is not sufficient to establish prejudice. *See Netlist, Inc. v. Smart Storage Sys., Inc.*, No. 13-CV-5889-YGR, 2015 WL 1738192, at *1 (N.D. Cal. Apr. 9, 2015). *See also Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-3970-RMW, 2013 WL 5225522, at *5 (N.D. Cal. Sept. 17, 2013) ("Delay alone, without specific examples of prejudice resulting therefrom, is insufficient to establish *undue* prejudice[.]"). "A stay will, by definition, delay the adjudication in federal court of the claims relating to" the asserted patents. *Unwired Planet, LLC v. Google Inc.*, No. 3:12-CV-00504-MMD-VP, 2014 WL 301002, at *6 (D. Nev. Jan. 27, 2014). Although the delay may inconvenience Uniloc, there is "no viable threat of prejudice" from a stay. *Id.* at *7.

Indeed, Uniloc is a non-practicing entity that exists solely to purchase patents and assert them in serial litigation against companies like Sling. Uniloc does not make or sell any products that practice the asserted patents and Uniloc does not compete against Sling (directly or indirectly). *See Gemalto*, No. 15-cv-02776-RM-MJW, Dkt. 100 at 3 (finding that this factor weighs in favor of a stay and that plaintiff would not be prejudiced by a stay because "the parties are not 'direct competitors'"). As such, Uniloc does not stand to lose sales or market share due to a stay. Moreover, Uniloc's decision not to move for a preliminary injunction undermines any claim that it would be unduly prejudiced by a stay. *See ACQIS*, 109 F. Supp. 3d at 358 ("[Plaintiff] did not seek a preliminary injunction in this case, undermining its claim of undue prejudice."). Although Sling denies that Uniloc is entitled to any relief, any harm to Uniloc that results from a stay could

be adequately compensated with monetary damages. *See, e.g.*, *Software Rights Archive*, 2013 WL 5225522, at *6 (granting motion to stay pending IPR and recognizing that where plaintiff and defendant "are not competitors" and plaintiff "does not market any products or services covered by the claims of the patents-in-suit and does not seek a preliminary injunction" there is no risk of irreparable harm and plaintiff can be "fully restored" with monetary relief). Accordingly, Uniloc would not be unduly prejudiced by a stay and this factor weighs in favor of granting Sling's motion.

### D. Staying the case will reduce the burden on the parties and on the Court.

The final factor—whether a stay will reduce the burden of litigation on the parties and on the Court—also weighs heavily in favor of a stay. Because issue simplification frequently results in a reduced burden for the parties and the Court, courts "often collapse the first and fourth factor" into one analysis. *Fusion Specialties, Inc. v. China Network Leader, Inc.*, No. 12-cv-00009-CMA-KMT, 2012 WL 3289077, at *2 (D. Colo. Aug. 11, 2012). Here, a stay will reduce court congestion and could result in the elimination of Uniloc's cause of action altogether for the reasons discussed above. Moreover, a stay at this stage of the case will avoid needless waste of judicial resources while the parties engage in IPR proceedings. There is no need for the Court to rule on Sling's motion to dismiss under § 101 until the Court knows which, if any, patents or claims survive IPR. Additionally, if the PTAB institutes trial on Sling's petitions, a stay will conserve the Court's resources by avoiding the burden of preparing for and conducting a technology tutorial and claim construction hearing and drafting a claim construction order when some (and perhaps all) of the work may be unnecessary.

A stay will also reduce the burden and cost to the parties. If the case is not stayed, the Court's Scheduling Order requires Sling to serve invalidity contentions and claim charts and produce

accompanying items of prior art on September 2, 2019. *See* Dkt. 51 at 9. The parties would also be required to exchange lists of claim terms to be construed and proposed constructions, prepare and file a Joint Disputed Claim Terms Chart, prepare for a technology tutorial, and file claim construction briefs—all before the PTAB issues its institution decisions. These tasks are onerous and expensive. For instance, preparing invalidity contentions will require Sling to identify all of the prior art it may rely on for invalidity purposes, prepare charts detailing its invalidity grounds based on that prior art, explain all motivations to combine the various prior art references for purposes of obviousness, and detail all non-prior art invalidity grounds. These are not trivial tasks and, if Sling prevails in the IPR proceedings, these efforts will have been entirely unnecessary.

Additionally, granting a stay will reduce the burden on the parties resulting from fact and expert discovery—a burden that falls disproportionately on Sling. Without a stay, the parties will be forced to move forward without knowing which, if any, of Uniloc's asserted claims will survive IPR. Given the varying subject matter of the asserted claims and the different functionalities that Uniloc is accusing of infringement, such an approach would likely result in a substantial waste of the parties' time and resources exploring issues that may ultimately be mooted by the IPRs. The more prudent approach is to stay this case pending decisions on Sling's petitions and, in doing so, focus the issues for the parties and the Court before moving forward with discovery.

In light of the potential cost savings and reduced burden to the parties and the Court, this factor heavily favors a stay.

### E. A Stay Of This Action Would Not Be Premature

Uniloc may argue that a stay is premature, because the USPTO may choose not to institute IPR proceedings based on Sling's petitions. As explained above, however, even if the PTAB

declines to institute trial on Sling's petitions, the Court's claim construction analysis will be informed by the PTAB decisions. Accordingly, there will be issue simplification even if the USPTO chooses not to institute. Moreover, in the unlikely event that the IPRs are not instituted, the stay will be relatively short and the action can continue with minimal delay.

The more likely outcome, however, is that one or more IPR proceedings will be instituted. If the Court denies this motion, it will likely be faced with another motion to stay, at which point Uniloc would undoubtedly argue that the stay should be denied due to the significant resources expended by the parties and the Court in the months between this motion and the institution decisions. The Court would then have to balance that expenditure of resources against the benefits of staying the case at that time. There is also the risk that developments in the IPR proceeding will necessitate reconsideration of certain issues, such as the Court's claim construction order. As such, "the risk of delay attending an unnecessary stay is minimal relative to the risk of unnecessary expenditure of resources should the stay be denied and an IPR subsequently commence." *See Wonderland Nursery*, 2015 WL 1809309, at *3.

## VI.  CONCLUSION

All the relevant factors weigh in favor of a stay. Accordingly, Sling respectfully requests that the Court grant its motion to stay this case. Sling also respectfully requests oral argument.

Dated:  August 13, 2019                    Respectfully submitted,
                                           */s/ Kurt M. Pankratz*
                                           Kurt M. Pankratz
                                           BAKER BOTTS L.L.P.
                                           2001 Ross Avenue, Suite 900
                                           Dallas, TX 75201
                                           Telephone:  (214) 953-6500
                                           Fax:  (214) 953-6503
                                           Email:  kurt.pankratz@bakerbotts.com
                                           *Attorneys for Defendant Sling TV L.L.C.*

## CERTIFICATE OF CONFERENCE PURSUANT TO D.C.COLO.LCivR 7.1

The undersigned certifies that on July 17, 2019 counsel for Sling conferred with counsel for Plaintiff via e-mail communication with respect to the subject matter of this motion. On July 22, 2019, counsel for Sling conducted a teleconference discussion with counsel for the Plaintiff. During the teleconference, the parties discussed their respective positions with respect to this motion. Counsel for Plaintiff indicated that Plaintiff opposed Sling's motion to stay pending decisions on petitions for *inter partes* review.

/s/ Ali Dhanani
Ali Dhanani

**CERTIFICATE OF SERVICE**

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/EMF system on the 13th day of August, 2019. Any other counsel of record will be served via First Class Mail.

*/s/ Ali Dhanani*
Ali Dhanani
